Judge Underwood
delivered the opinion of the Court.
Brenham won from Cates, at cards, a,, considerable sum, for which Cates executed his note. Brenham assigned this note to Major, for a valuable consideration. Majortransmitted the note to hisagent, Wooldridge, for collection. Wooldridge surrendered the original note to Cates, and took from him a new note, made payable, directly to Wooldridge, for the amount of the principal and interest of the first note, within a year. When the note thus executed to Wooldridge, became due, he instituted a suit thereon, against Cates, and recovered judgment; to enjoin which, Cates filed his bill. The circuit court perpetuated the injunction, and Wooldridge has appealed.
Two questions present themselves. 1st. Did the execution of the note to Wooldridge, have the effect to purify the vicious and illegal consideration of the first note, so as to render the second note unimpeachable in a court of chancery? 2d. Can Wooldrige’s knowledge, at the time he took the second note, payable to himself, that the first note was founded upon a gaming consideration, operate in behalf of Cates,, *222 so as to transfer and attach, the same vicious consideration to the new note?
Loss by contract, is con-si,deration sufficient to sustain it. Bona fide assignee, without notice of the gaming consideration takes new Bote from ob-ligor, giving Slim one year’s indulgence ; new •note is valid, for obligor has thus destroyed or postponed assignee’s recourse.
“A consideration may arise, or be created, by doing, or permitting somewhat to be done, to the prejudice or loss of one of the parties. So that it is not absolutely necessary, that the consideration for a contract, imports some gain to him that makes the contract; but it is sufficient, that the party, in whose favor the contract is made, foregoes some advantage or benefit which otherwise he might have taken, or had, or suffers some loss, in consequence of placing his confidence in another’s undertaking.” Powell on Contracts, 344.
In this case, Major is most interested, in the note now held on Cates, although the judgment is in the name of Wooldridge. H is Cates done, or permitted to be done, any thing which might operate to the prejudice or loss of Major? We think he has. He has taken from Wooldridge, the agent, the note assigned by Brenham to Major. It has been settled by the execution of the new note; and thus the recourse which Major had against Brenham, upon the assignment has been destroyed. To say the least, it has heen postponed by the new note, one year. The loss of remedy upon the assignment, and the indulgence granted by the new contract, constitute, in our opinion, as between Cates and Wooldridge, the agent, a sufficient consideration to support the new note, it does not appear that either Major or Wooldridge prac-tised any fruad upon Cates, to induce him to execute the new note; and the proof is clear, that Major was the bona fide assignee of the first note, for valuable consideration, without knowledge at the time it was assigned to him, of the turpitude of the consideration of- the note. Cates, under the circumstances, having executed a new note, upon a new and legal consideration, payable to the bona fide holder of the first note, taking a year’s indulgence to himself, must pay it. If he should be relieved, irreparable injury might be inflicted on Major.
Suppose Brenham has become insolvent, duringthe time Cates, by his conduct, induced Major and Wool-dridge to look to him for payment, shall Cates after- *223 wards exonerate himself from an express engagement, and turn them over to Brenham for redress? Gamblers may avail themselves of the provisions of the statutes, to suppress gaming, by taking care to keep within their operation: but they cannot be permitted, when their notes, founded on gaming considerations, pass into the hands of bona fide assignee, to take up such notes by new ones, executed to the as-signee or his agent, and infect the new note with the turpitude of the original transaction, to which the assignee was no party, when such new note is given under prospect of advantage to the obligor, and evident disadvantage to the obligee, if it be- not enfor-eed. If the principal obligor in a note, induces an assignee to purchase it, he waves any equity which he may have against the obligee. This doctrine has been so repeatedly settled, that it was said to be unnecessary to cite authorities to prove it, in the case of Morison’s administrators vs. Beckwith, IV. Monroe, 73; and certainly, no doctrine of the law is better established. If Cates had induced Major to purchase the note from Brenham, and had told Major he would pay it, although it was executed upon a gaming consideration, Cates by so doing, would have precluded himself from all equitable defence against Major. The taking in the old note, and executing a new one to Major’s agent, constitutes a case equally strong against Cates.
<juch]gas-" signee to purchase note, hl3 gainstobli-see; and so, ming consideration,induce a8818^“ saying he will pay it.
■The note executed by Cates to Brenham, should be regarded as paid. The new note has been accepted in discharge of it. It is the same thing, as though it had been discharged by money or property. Cates has no right, according to the principles settled in the case of Downs vs. Quarles, &c. Littell’s Select Cases, 499, recognized and referred to in the case of Gill vs. Webb’s administrator, IV. Monroe, 299, to ask a decree against Brenham.
It is, therefore, the opinion of this court, that the circuit court erred in perpetuating the injunction.
Wherefore, the decree of the circuit court is reversed, and the cause remanded, with directions to-that court, to dissolve the injunction, and to decree the defendant, Wooldridge, ten per cent, damages, on *224 the sum enjoined, and to dismiss the complainant’s biUj with costg.
Denny, for appellants.
The appellants must recover their costs in this court.